Filed 7/8/21  P. v. Ramirez CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078364 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD138947) |
| RAUL ENRIQUE RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

In 1999, a jury convicted Raul Ramirez of first degree, premeditated murder (Pen. Code,[1] §§ 187, subd. (a) and 189). The jury found the victim was a taxi driver in the performance of his duties (§ 190.25); first degree robbery (§§ 211 and 212.5); and arson (§ 451, subd. (d)). The jury found the special circumstance of murder during a robbery was not true (§ 190.2, subd. (a)(17)). Ramirez admitted a prior strike (§ 667, subds. (b)-(i)) and a serious felony prior conviction (§ 667, subd. (a)(1)). Ramirez was sentenced to life without parole plus 18 years four months in prison.

Ramirez appealed his conviction and this court affirmed the judgment in an unpublished opinion filed February 13, 2001. (*People v. Ramirez* (Feb. 13, 2001, D034781) [nonpub. opn.].)

In September 2020, Ramirez filed a pro. per. petition for resentencing under section 1170.95. The trial court did not appoint counsel for Ramirez. The court reviewed the record of conviction and this court's prior opinion. The court denied the petition by written order concluding Ramirez, who had been convicted of premeditated murder, had not made prima facie showing of eligibility for relief under section 1170.95.

Ramirez filed a timely notice of appeal.

In his appeal, Ramirez contends the trial court erred by (1) failing to appoint counsel; (2) considering the record of conviction and this court's opinion without first issuing an order to show cause; and (3) finding him ineligible for relief as a matter of law.

We will assume the court erred in failing to appoint counsel, but we will find any error harmless as Ramirez plainly is not eligible for resentencing under the statute. Regarding the procedural issues, we are well aware the law on these issues is wholly unsettled. The Courts of Appeal are

---

[1] All further statutory references are to the Penal Code.

split on the question of what procedure must be followed and what material a trial court may consider in screening petitions for resentencing under section 1170.95. Our Supreme Court has granted review in multiple cases on all sides of the issues. In short, we will have to wait for the high court to provide guidance to the courts. In the meantime, we will make our best efforts to resolve the cases before us pending further guidance.

## STATEMENT OF THE FACTS

The parties each rely on the facts of the offenses as set forth in our prior opinion. We will adopt those facts and set them forth here. (*People v. Ramirez, supra*, D034781.)

"On the evening of August 8, 1998, Ramirez, his girlfriend and another Hispanic man went to the home of Carlos Garcia and Jessica Martinez. Several of Garcia's friends were also present. At some point, Ramirez fired a gun in the home and apologized to Martinez for having done so. Martinez saw Ramirez with two guns: a revolver and a semiautomatic. At another point during the evening, Ramirez talked about wanting to 'jack a cooker,' i.e., rob a drug dealer. Later, when most of the other people were asleep or passed out, Ramirez asked to use the telephone.

"A short time later, Martinez saw a taxicab arrive at her residence. Martinez spoke to the driver, Giam Weldeghieogis. Taxi dispatch records show Weldeghieogis responded to the call at 4:42 a.m. Ramirez spent about 20 to 30 minutes in the house while unsuccessfully searching for one of his black leather Nike gloves, keeping Weldeghieogis waiting in the meantime. Martinez kept telling Weldeghieogis to go ahead and leave, but Weldeghieogis said he needed the money. Eventually, Ramirez, his girlfriend and the other Hispanic man left in Weldeghieogis's cab.

"About 6:44 a.m., a man commuting to work with his wife saw a cab on fire in an alley. He saw two men walking away from the burning cab. One of these men was Ramirez who was standing four or five feet from the 'tail end' of the cab and setting down a gas can. Ramirez's hand was wrapped with a piece of cloth. There was blood on the cloth as well as blood around Ramirez's mouth. The other man was Hispanic. He was standing by the front end of the cab, holding a bicycle. Ramirez and the other man walked down the alley toward the witness, stopped at the end of the alley by the sidewalk, made eye contact with the witness and then talked briefly to each other. The two men started walking away. Ramirez, however, turned to the witness and said, 'You need to call the fire department.' The witness ran toward the cab but was unable to do anything because the fire was too extensive. The witness was able to flag down a police officer.

"Weldeghieogis's severely burned body was found inside the cab on the passenger side. An autopsy revealed that Weldeghieogis had been shot seven times, including twice in the back of his head and once through his upper back. These wounds were either fatal or potentially fatal wounds. Weldeghieogis probably lived at least 15 minutes after the wound to his upper back was inflicted. The remaining gunshot wounds were to Weldeghieogis's hip or buttocks and were probably inflicted after he died. Weldeghieogis also suffered some blunt force wounds inflicted shortly before he died. He was probably dead before the fire began.

"An arson investigator for the San Diego Fire Department Metro Arson Strike Team testified the cab fire was caused by someone pouring gasoline inside the interior of the cab, on the cab's roof, and possibly also on the cab's trunk and then igniting the gasoline vapors with an open flame. The investigator testified it was not unusual for the person who starts such a fire

4

to suffer burns because gasoline vapors tend to drop to the ground and the person starting the fire may be unaware he is standing in the vapors.

"At the scene the police found, among other items, one Nike mesh and leather or imitation leather glove, a partially burned pair of shorts that contained DNA matching Ramirez, a red plastic gasoline can, two crumpled or folded $20 bills half-hidden by a bush, and $38 in Weldeghieogis's shirt pocket. The police did not find any sign of Weldeghieogis's inch-thick wallet, the credit cards that were in the wallet or the key he carried in his wallet.

"Between 7:00 and 7:15 a.m., Ramirez arrived at a hospital emergency room, wearing only a bathrobe, accompanied by one or two Hispanic men. Ramirez had burns on his back, buttocks, legs, left side of his face and his hands, the most severe being to his hands. The Hispanic men left immediately after hospital personnel began attending to Ramirez. Ramirez claimed the burns occurred when he was putting gas into a carburetor and had lighted a cigarette. This story was inconsistent with Ramirez's burns; if he had been burned as he claimed, then the burns should have been on his face and the front part of his body, not on his back. Hospital personnel notified the police.

"A police officer interviewed Ramirez in the hospital. Ramirez repeated his carburetor story, telling the officer he had been in Tijuana with his brother when the incident occurred and his brother dropped him at the border where Ramirez somehow was able to get to the hospital in Hillcrest with the help of a stranger. Later, Ramirez told the officer that after the fire, he was taken to his uncle's house in Tijuana and it was his uncle who gave him a bathrobe and drove him to the hospital.

"Ramirez did not present any evidence."

DISCUSSION

Ramirez contends the trial court not only erred in considering the record of conviction at the prima facie stage, but that the court erred in finding the conviction here for first degree, premeditated murder disqualified him under the statute. He supposes that the jurors might have speculated that one of the other, unidentified Hispanic males might have been the actual killer.

We are satisfied the trial court correctly found that this record that Ramirez was the actual killer who intentionally killed the victim after premeditation and deliberation.

A. Legal Principles

Senate Bill No. 1437 was enacted to " 'amend[ ] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stat. 2018, ch. 1015, § 1, subd (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)

The first step the court must take in evaluating a petition for resentencing under this section is to make an examination of the petition and the record to determine whether the petitioner has made a prima facie showing of entitlement to relief, such that the court must issue an order to show cause and hold an evidentiary hearing. If the court properly determines the petitioner is not eligible for relief as a matter of law, the petition must be dismissed. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598;

6

*People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675, review granted July 8, 2020, S262481.)

Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The trial court may review the file and record of conviction in reviewing the petition at the first prima facie evaluation. (*Verdugo, supra,* 44 Cal.App.5th at pp. 329-330, review granted.)

Trial judges may not engage in fact-finding at the initial stage of petition review. The court, however, may consider readily available facts in determining if the petitioner has made a prima facie showing of eligibility for relief. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.)

B. Analysis

We start our analysis with the record of conviction. Ramirez was convicted of first degree murder, requiring an intention to kill that follows premeditation and deliberation. Conviction of such crime renders Ramirez ineligible for resentencing under section 1170.95. However, Ramirez notes the jury was also instructed on felony murder. As our court pointed out in our prior opinion, the jury found the murder during a robbery special circumstance to be not true. As we previously concluded, that left only premeditated murder. We found the evidence supported the conviction.

7

The court in the jury trial did not instruct the jury on liability based on natural and probable consequences. Ramirez was prosecuted as the perpetrator of the murder, the robbery, and the arson. Ramirez was seen standing next to the burning taxi and was holding a gasoline can. He arrived at the hospital shortly afterward with severe burn injuries, which expert testimony identified as consistent with having committed the arson using gasoline.

In short, there is nothing in this record from which a reasonable inference could be drawn that Ramirez was other than the perpetrator of the horrific crimes for which he was convicted.

The trial court should have appointed counsel for Ramirez, however, on this record, a different outcome is not possible.

## DISPOSITION

The order denying Ramirez's petition for resentencing under section 1170.95 is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.

8